# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS,
## HOUSTON DIVISION

GAIL M. GILLESPIE, AUDREY F.     '
GILLESPIE, DARYL GILLESPIE, AND
DELORES FOSTER,
     '

      Plaintiffs,     '

vs.     '     Case No. 4:14-cv-00279

OCWEN LOAN SERVICING, LLC,     '

      Defendant.     '

## DECLARATION OF DIANE WEINBERGER

1.     My name is Diane Weinberger. I am of sound mind and capable of making this unsworn declaration pursuant to 28 U.S.C. § 1746. I am over the age of twenty-one (21) years, have never been convicted of a felony or crime involving dishonesty and am fully competent to testify to the matters herein. This declaration is based on my personal knowledge and all of the facts stated herein are true and correct.

2.     I am currently employed as a Document Control Officer for Select Portfolio Servicing, Inc. ("SPS"). SPS maintains a computer database (the "Loan Records") of acts, transactions, payments, communications, escrow account activity, disbursements, events, and analyses (the "Loan Transactions") with respect to the mortgage loans that SPS services. The Loan Records also include electronic images of the original loan documents and of correspondence relating to such loans. The Loan Records are kept in the course of SPS's regularly conducted activity and it is the regular practice of SPS to make the records in the Loan Records. The entries in the Loan Records are made at the time of the events and conditions they describe either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge. I have access to the Loan Records with respect to the loan described below, and have knowledge of how they are maintained. Based upon my review of the Loan Records, I have gained knowledge of the facts set forth herein and, if called upon as a witness to testify, I could and would competently testify as to those facts, under penalty of perjury.

3.     In my referenced capacity, I have had the opportunity to review the Loan Records related specifically to the loan Gail M. Gillespie, Audrey F. Gillespie and Delores Foster (collectively, the "Borrowers") obtained that is secured by the real property located at 2514 Shadow Oaks Drive, Fresno, Texas (the "Property"). In particular, the Loan Records reflect that the Borrowers obtained a loan from Mountain States Mortgage Centers, Inc. on July 27, 2009 (the "Loan"). The Loan Records reflect that the terms of the Loan are set forth in a Note ("Note"), executed by Borrowers, and a Deed of Trust ("Deed of Trust"), executed by Borrowers. The Loan

Records further reflect that the Loan was secured by a lien on the Property. **Exhibit 1** attached hereto is a true and correct copy of the original Note. **Exhibit 2** attached hereto is a true and correct copy of the Deed of Trust.

4. The Loan Records reflect that the Loan was obtained, in part, to pay off $216,860.00 of Borrowers' pre-existing loan with CITI Mortgage. **Exhibit 3** attached hereto is a true and correct copy of the Borrowers' HUD-1 Settlement Statement.

5. The Loan Records reflect that the Loan is currently owned by Plaintiff DLJ Mortgage Capital, Inc. ("Plaintiff").

6. The Loan Records reflect that Select Portfolio Servicing, Inc. ("SPS") is the current mortgage servicer for the Property.

7. The Loan Records reflect that Borrowers defaulted on their payment obligations under the Loan.

8. The Loan Records reflect that the Borrowers have not cured their default.

9. The Loan Records reflect that the current payoff for the Loan, as of September 1, 2015 is $317,965.78.

10. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2015.

Diane Weinberger

DIANE WEINBERGER

# NOTE

GILLESPIE
Loan #: 609060054
MIN: 100300607100921508
Case #: 493-8990298-703

| JULY 27, 2009 | SANTA ANA | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

2514 SHADOW OAKS DR, FRESNO, TX 77545
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means MOUNTAIN STATES MORTGAGE CENTERS INC. and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED TWENTY THOUSAND SEVEN HUNDRED TWENTY FOUR Dollars (U.S. $220,724.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND SEVEN-EIGHTHS percent (5.875%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on SEPTEMBER 1, 2009. Any principal and interest remaining on AUGUST 1, 2039, will be due on that date, which is called the maturity date.

### (B) Place

Payment shall be made at 1333 EAST 9400 SOUTH, SANDY, UT 84093 or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $1,305.67. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [Specify] _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

# EXHIBIT 1

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive notice of intention to accelerate, except as provided in Section 6 (B) above, and the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

809060054

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ 7-27-2009
- BORROWER - GAIL M GILLESPIE - DATE -

_____ 7-27-2009
- BORROWER - - DATE - Delores Foster

_____ 7-27-2009
- BORROWER - AUDREY GILLESPIE - DATE -

*[Sign Original Only]*

Record and return to:
TRANSCONTINENTAL ESCROW CO
3 MacArthur Place, #960
Santa Ana, CA 92707

Prepared By:
JACLIN TIMPSON
MOUNTAIN STATES MORTGAGE CENTERS INC.
1333 EAST 9400 SOUTH
SANDY, UT 84093
(801) 576-1000

After Recording Mail To:
MOUNTAIN STATES MORTGAGE CENTERS INC.
1333 EAST 9400 SOUTH
SANDY, UT 84093
(801) 576-1000
ATTN: FINAL DOCS DEPARTMENT

AS PER ORIGINAL

[Space Above This Line For Recording Data]

## DEED OF TRUST

PARCEL ID# 2704020040230907

GILLESPIE
Loan #: 309060054
MIN: 100300607300921508
PIN: 2704020040230907
Case #: 493-8890298-703

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on JULY 27, 2009. The grantor is GAIL M GILLESPIE, AUDREY F GILLESPIE AND DELORES FOSTER ("Borrower"). The trustee is FIRST AMERICAN TITLE, whose address is 3 MCARTHUR PLACE SUITE 960, SANTA ANA, CA 92707 ("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS. MOUNTAIN STATES MORTGAGE CENTERS INC., ("Lender") is organized and existing under the laws of UTAH, and has an address of 1333 EAST 9400 SOUTH, SANDY, UT 84093. Borrower owes Lender the principal sum of TWO HUNDRED TWENTY THOUSAND SEVEN HUNDRED TWENTY FOUR Dollars (U.S. $220,724.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on AUGUST 1, 2039. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in FORT BEND County, Texas:

405.5                    Page 1 of 11                    FHA Texas Deed of Trust - 10/08

# EXHIBIT 2

**SEE ATTACHED**

which has the address of 2514 **SHADOW OAKS DR, FRESNO, TX 77545** ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing, canceling or assigning this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, for (c) premiums for insurance required by Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by

RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's accounts shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale

or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take

one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit

reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any

Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If after complying with all applicable statutory notice provisions Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed**

shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts acquired by Lender by assignment or are released by the holder thereof upon payment.

22. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider      ☐ Graduated Payment Rider
☒ Other(s) [specify]
     Renewal & Extension Rider

24. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**

Check box as applicable:

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

25. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 25.

AS PER ORIGINAL

809060054

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_G. M. Gillespie_        7-27-2009
- BORROWER - GAIL M. GILLESPIE - DATE -

_Delores Foster,_  7-27-2009
- BORROWER -        - DATE - Delores Foster

_Audrey F. Gillespie_ 7-27-2009
- BORROWER - AUDREY GILLESPIE - DATE -

Witnesses:

_____        _____
Witness        Witness

405.5        Page 10 of 11        FHA Texas Deed of Trust - 10/08

809060054

STATE OF Texas

COUNTY OF Fort Bend

This instrument was acknowledged before me on July 27, 2009 , by

Gail M. Gillespie, Audrey F. Gillespie, Delores Foster

MARGIE THOMPSON
My Commission Expires
December 22, 2009

*Margie Thompson*
Notary Public

My Commission Expires: 12-22-2009

405.5       Page 11 of 11       FHA Texas Deed of Trust – 10/88

## RENEWAL AND EXTENSION RIDER

The Note hereby secured is given in renewal and extension of the sum(s) left owing and unpaid on that prior indebtedness which has been paid by the loan proceeds from and thereby merged into the Note hereby secured, such prior indebtedness being described as follows, to-wit:

**Promissory Note**

Date: 04/08/2008

Amount: $ 217,463.00

Payee: CRESTMARK MORTGAGE LTD

**Deed of Trust**

Date: 04/17/2009

Grantor: GAIL M GILLESPIE AND DARYL GILLESPIE

Trustee: R.J.DANIEL

Recording Information: DOCUMENT NO. 2008041238 , BOOK _____, PAGE _____, in the

Real Property Records of FORT BEND County, Texas.

**Vendors Lien Retained in Deed (If Applicable)**

Date: _____

Recording Information: DOCUMENT NO. _____, BOOK _____, PAGE _____, in the

Real Property Records of _____ County, Texas.

**Assignment Information (If Applicable)**

Date: _____

Assignee: _____

Assignment Recording Information: DOCUMENT NO. _____, BOOK _____, PAGE _____, in

the Real Property Records of _____ County, Texas.

**Modification Information (If Applicable)**

And all modifications and/or extensions thereof.

Said lien(s) being against the herein described property and it is expressly agreed by Borrower(s) that said note(s) and lien(s) are hereby renewed, extended and carried forward in full force and effect to secure payment of the Note hereby secured and if not the original owner and holder or if not previously subrogated the holder of the Note hereby secured is hereby subrogated to all the rights, powers and equities of the original owner(s) and holder(s) of the above described indebtedness.

**EXHIBIT "A"**

LOT 23, BLOCK 4, OF CREEKMONT SEC. 2, AN ADDITION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN SLIDE NO. 20060069 OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Diane Wilson*

2009 Aug 25 04:29 PM       2009089914
ALT $59.00
Dianne Wilson COUNTY CLERK
FT BEND COUNTY TEXAS

US Department of Housing and Urban Development

**SETTLEMENT STATEMENT**

OMB No. 2502-0265

**A.**

**B. Type of Loan**

| | | | |
|---|---|---|---|
| 1. [X] FHA  2. [ ] FmHA  3. [ ] Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Ins. Case #: |
| 4. [ ] VA  5. [ ] Conv. Ins. | 60-00092547 | 809060054 | 493-8990298 703 |

**C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside the closing; they are shown here for information purposes and are not included in the totals.**

**D. NAME AND ADDRESS OF BORROWER:**GAIL M GILLESPIE, ADUREY F GILLESPIE, 2514 SHADOW OAKS DR FRESNO TX, 77545-6070

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:**   MOUNTAIN STATES MORTGAGE 1333 EAST 9400 SOUTH SANDY, UT, 84093

**G. PROPERTY LOCATION:**        2514 SHADOW OAKS DR FRESNO TX, 77545-6070

**H: SETTLEMENT AGENT:**   TransContinental Title, 5700 Granite Parkway, Ste. 289, Plano TX 75024
**PLACE OF SETTLEMENT:**

**I. SETTLEMENT DATE:**   07/27/2009                    **DISBURSEMENT DATE:**07/31/2009

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER :** | | **400. GROSS AMOUNT DUE TO SELLER :** | |
| 101. Contract Sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | $10,078.55 | 403. | |
| 104. CITI | $215,073.17 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | $225,151.72 | **420. Gross Amount Due Seller** | $0.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER :** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER :** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $220,724.00 | 502. Settlement charges to seller (line 1400) | $0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. MIP REFUND | $1,671.15 | 504. Payoff of first mortgage loan | |
| 205. LENDER ADVANCE FOR ESCROW | $891.10 | 505. Payoff of second mortgage loan | |
| 206. LENDER ADVANCE FOR JULY PMT | $137.47 | 506. | |
| 207. LENDER CREDIT | $1,728.00 | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller | | Adjustments for items unpaid by Seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $225,151.72 | **520. Total Reduction Amount Due Seller** | $0.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER :** | | **600. CASH AT SETTLEMENT TO/FROM SELLER :** | |
| 301. Gross Amount due from borrower (line 120) | $225,151.72 | 601. Gross amount due to seller (line 420) | $0.00 |
| 302. Less amounts paid by/for borrower (line 220) | $225,151.72 | 602. Less reductions in amt. due seller (line 520) | $0.00 |
| **303. Cash [] From  [] To Borrower** | $0.00 | **603. Cash [] From  [] To Seller** | $0.00 |

Parties agree that no liability is assumed by Settlement Agent for the accuracy of information furnished by others as shown on the Settlement Statement.
Agent hereby expressly reserves the right to deposit any amounts collected for disbursement in an interest bearing account in a Federally insured institution, and to credit any interest so earned to its own account

SELLER(S):

# EXHIBIT 3

## SETTLEMENT CHARGES

L.

| | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| 701. Listing Realtor Commision | | |
| 702. Selling Realtor Commision | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. PROCESSING FEE to MSMC | $141.60 | |
| 806. | | |
| 807. | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from 07/29/2009 TO 08/01/2009 @$106.58/DAY | $319.74 | |
| 902. Mortgage Insurance Premium for FHA HUD | $3,261.95 | |
| 903. Hazard Insurance Premium for CYPRESS TX LLOYDS 0 years @ per year | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard Insurance 6 months @ $76.17 per month | $457.02 | |
| 1002. Mortgage Insurance 0 months @ $99.10 per month | | |
| 1003. City property taxes | | |
| 1004. County property taxes 10 months @ $420.32 per month | $4,203.20 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. | | |
| 1009. | | |
| 1010. Aggregate Adjustment | $-609.36 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee | | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title Insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (Includes above item numbers:    ) | | |
| 1108. Title Insurance 60% to TRANSCONTINENTAL TITLE COMPANY/40% to FIRST AMERICAN | $1,488.00 | |
| (Includes above item numbers:    ) | | |
| 1109. Lender's coverage $220,724.00 ($1,488.00) | | |
| 1110. Owner's coverage | | |
| 1111. ESCROW FEE TO TCT | $450.00 | |
| 1112. GAURANTY FEE TO TCT | $5.00 | |
| 1113. ENDORSEMENTS (T-19,T-30&R-24,T-36) TO TCT | $124.40 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording fees: FORT BEND County Clerk Mortgage Filing Fee | $107.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1303. TAX CERT TO NATIONAL TAXNET | $55.00 | |
| 1304. REFIE FEE to CREST MANAGEMENT | $75.00 | |
| 1305. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | $10,078.55 | $0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWER(S):

X _____    X _____
GAIL M GILLESPIE                      ADUREY F GILLESPIE

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____    _____
TransContinental Title, 5700 Granite Parkway, Ste. 289, Plano TX 75024    Date

# Settlement Statement

Optional Form for Transactions without Sellers

U.S. Department of Housing and Urban Development

OMB Approval No.2502-0265 (expires 11/30/2009)

| Name and Address of Borrower: | Name and Address of Lender: |
|---|---|
| GAIL M GILLESPIE<br>AUDREY GILLESPIE<br>DELORES FOSTER<br>2514 SHADOW OAKS DR<br>FRESNO, TX 77545 | MOUNTAIN STATES MORTGAGE CENTERS INC.<br>1333 EAST 9400 SOUTH, SANDY, UT 84093 |

| Property Location: (if different from above) | Settlement Agent: FIRST AMERICAN TITLE |
|---|---|
| 2514 SHADOW OAKS DR<br>FRESNO, TX 77545 | Place of Settlement:<br>3 MCARTHUR PLACE SUITE 960, SANTA ANA, CA 92707 |
| Loan Number: 809060054 | Settlement Date: 07/27/09 |

[B=Borrower | S=Seller | L=Lender | K=Broker | R=Branch | O=Other]

| L. Settlement Charges | Borrower Pays | M. Disbursement to Others | Borrower Pays |
|---|---|---|---|
| 800. Items Payable in Connection With Loan | | 1501. | |
| 801. Loan Origination Fee 0.000% to | | 1502. | |
| 802. Loan Discount 0.000% to | | 1503. | |
| 803. Appraisal Fee to | | 1504. | |
| 804. Credit Report to | | 1505. | |
| 805. Lender's Inspection Fee to | | 1506. | |
| 806. Mortgage Insurance Application Fee to | | 1507. | |
| 807. ASSUMPTION FEE | | 1508. | |
| 808. | | 1509. | |
| 809. PROCESSING FEE to MSMC | $341.60 | 1510. | |
| 810. | | 1511. | |
| 811. | | 1512. | |
| 812. | | 1513. | |
| 813. | | 1514. | |
| 814. | | 1515. | |
| 900. Items Required By Lender To Be Paid in Advance | | Additional Disbursements | |
| 901. Interest from 07/23/09 to 08/01/09 3 @<br>$35.5275/day | $106.58 | | |
| 902. Upfront MIP to FHA HUD | $3,261.95 | | |
| 903. Hazard Insurance Premium for 0 Years to<br>CYPRESS TX LLOYDS | | | |
| 904. | | | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard Insurance 6 months @ $76.17 per<br>month | $457.02 | | |
| 1002. Mortgage Insurance 0 months @ $95.10 per<br>month | | | |
| 1003. City Property Taxes 0 months @ per month | | | |
| 1004. County Property Taxes 10 months @<br>$420.32 per month | $4,203.20 | | |
| 1005. Annual Assessment 0 months @ per month | | | |
| 1006. Aggregate Adjustment | $-609.36 | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to TRANSCONTINENTAL | $450.00 | | |
| 1107. Attorney's fees to | | | |
| (includes above items numbers: | ) | | |
| 1108. Title insurance to TRANSCONTINENTAL | $1,488.00 | | |
| (includes above items numbers: | ) | | |
| 1109. LENDER COVERAGE to ENDORSEMENTS | | 1520. TOTAL DISBURSED (enter on<br>line 1603) | |
| 1110. OWNER COVERAGE to COURIER FEE | | N. NET SETTLEMENT | |
| 1111. GUARANTEE FEE to TRANSCONTINENTAL | $5.00 | 1600. Loan Amount | $220,724.00 |
| 1112. ENDORSEMENTS to TRANSCONTINENTAL | $124.60 | 1601. Plus Cash/Check from Borrower | |
| 1200. Government Recording and Transfer<br>Charges | | 1602. Minus Total Settlement Charges<br>(line 1400) | $9,735.39 |
| 1201. Recording fees: Deed ; Mortgage ; Releases ;<br>TRANSCONTINENTAL | $197.00 | 1603. Minus Total Disbursements to<br>Others (line 1520) | |
| 1202. City/County/Stamps: Deed ; Mortgage ; | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable<br>rescission period required by law) | $210,988.61 |
| 1203. State Tax/Stamps: Deed ; Mortgage ; | | | |
| 1204. | | | |
| 1205. | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1400. Total Settlement Charges (enter on line 1602) | $9,735.39 | | |

_(signature)_ 7-27-09
- BORROWER - GAIL M GILLESPIE - DATE -

_(signature)_ Delores Foster 7-27-09
- BORROWER - - DATE Delores Foster

_(signature)_ Audrey F. Gillespie 7-27-09
- BORROWER - AUDREY GILLESPIE - DATE -